UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VIKKI SIMPSON,

        Plaintiff,                      Case No. 1:20-cv-12077

v.                                          Honorable Thomas L. Ludington
                                            United States District Judge

TOTAL RENAL CARE, INC.
d/b/a TOWN CENTER DIALYSIS,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

While employed at Defendant Town Center Dialysis, Plaintiff Vikki Simpson maintained a contentious relationship with her direct supervisor and was disciplined seven times in two years. Then, after two more violations of company policy in August 2019, Defendant terminated her employment.

Plaintiff, however, alleges Defendant fired her for engaging in protected activities: refusing to violate the law and to refusing to conceal illegal conduct. Thus, she claims, Defendant's termination of her employment violated Michigan's public-policy exception to at-will employment, a common-law cause of action.

The questions presented are whether Plaintiff engaged in a protected activity and whether any such protected activity was the reason that Defendant terminated her employment.

**I.**

Defendant, a subsidiary of DaVita, Inc., provides medical care to patients with chronic kidney failure and renal disease. ECF Nos. 6 at PageID.59; 22-2 at PageID.151. In July 2017, Plaintiff began working as a charge nurse at Defendant's clinic in Saginaw, Michigan, where she

was responsible for patient safety and oversight of patient-care technicians. ECF Nos. 22-4 at PageID.188, 191; 22-26 at PageID.413. Her direct supervisor was Facility Administrator Catina Chandler.[1] ECF No. 22-4 at PageID.188.

Before Defendant terminated Plaintiff's employment, she was disciplined seven times for her performance, as earlier noted. She received one verbal warning,[2] two "Initial Written Warnings,"[3] and four coaching sessions.[4] Eleven months after the last reprimand, Defendant terminated Plaintiff's employment. *See* ECF No. 32-16 at PageID.1083–84.

Plaintiff argues she repeatedly refused to violate and to conceal violations of Michigan law during her employment. Plaintiff claims she refused to violate Michigan law when she refused (1) to provide medication to sedate a patient chemically, (2) to accept "physician orders" given by Chandler, who was not a licensed nurse, and (3) to change patients' weights in medical records. ECF No. 32 at PageID.939–40. Plaintiff also asserts she refused to conceal illegal conduct when (1) she filed an incident report after a patient threatened to kill her, and (2) filed an incident report regarding a coworker's alleged improper use of prescription drugs. *Id*. But Plaintiff does not provide timing details or proof for any of those events. *See id.*

Plaintiff alleges her final refusal to conceal illegal conduct occurred on August 14, 2019, when she told Chandler that they needed to shut down the dialysis clinic after patients complained

---

[1] At all relevant times, Chandler's surname was Swinton. But her name has since changed, and this Order uses her current name, "Chandler."
[2] Plaintiff received a verbal warning in April 2018. *See* ECF Nos. 22-11 at PageID.325; 32-5 at PageID.1051; 32-6 at PageID.1052.
[3] Plaintiff received "Initial Written Warnings" in June 2018, *see* ECF Nos. 22-14 at PageID.332; 32-9 at PageID.1064; 32-10 at PageID.1066, and in October 2018, *see* ECF Nos. 22-16 at PageID.338; 32-11 at PageID.1071; 32-13 at PageID.1077.
[4] Plaintiff received coaching in March 2018, *see* ECF Nos. 22-10 at PageID.322; 32-4 at PageID.1048, in April 2018, *see* ECF No. 32-7 at PageID.1056, in May 2018, *see* ECF No. 32-8 at PageID.1060, and in September 2018, *see* ECF No. 22-15 at PageID.335.

of cramping and discomfort. *See* ECF Nos. 22-4 at PageID.198–99; 22-17 at PageID.350; 22-5 at PageID.269–71; 32-2 at PageID.999. Plaintiff then spent several hours trying to determine and troubleshoot the issue that was causing patient complaints, with no success. ECF No. 22-4 at PageID.201, 203–04. Finally, around 1:00 PM, a doctor shut down the dialysis clinic. ECF Nos. 22-4 at PageID.203, 205; 22-5 at PageID.270–71. After the clinic shut down, Defendant investigated the incident and determined that the cause of the patients' complaints were an improperly calibrated machine and diluted bicarbonate that a patient-care technician improperly mixed under Plaintiff's supervision. ECF Nos. 22-17 at PageID.350; 22-21 at PageID.381; 22-22 at PageID.393–96; 22-23 at PageID.398–401. Defendant alleges Plaintiff was never asked to conceal a violation of the law, but that Plaintiff's actions that day contributed to the issue causing patient complaints and violated company policy and procedure. ECF No. 22-4 at PageID.207–208; ECF No. 22-17 at PageID.354; ECF No. 22-25 at PageID.410.

Five days later, Plaintiff was disciplined, again, because she failed to notify a physician of a patient's elevated blood pressure. ECF Nos. 22-17 at PageID. 347; 22-21 at PageID.383; 22-23 at PageID.401. In response, Plaintiff testified that she "knew nothing about" the incident, which merely demonstrates Defendant "padding [the] file against me to terminate me." ECF No. 32-2 at PageID.991.

On August 27, 2019, Defendant terminated Plaintiff's employment, citing her two August 2019 violations of company policy.[5] ECF No. 22-25 at PageID.410.

---

[5] Specifically, Defendant alleged Plaintiff did not follow proper procedures for "testing and documenting pH, conductivity and temperature of proportioned dialysate" on August 14, 2019, and that she did not follow procedures for collecting and documenting "baseline and ongoing information" when she did not notify the doctor of a patient's elevated blood pressure. *See* ECF No. 22-25 at PageID.410.

Plaintiff initiated her case in Saginaw County Circuit Court in June 2020 alleging the termination of her employment violated Michigan public policy. ECF No. 1-1 at PageID.14. Defendant removed the case to this Court based on diversity jurisdiction. ECF No. 1.

In July 2021, Defendant filed a motion for summary judgment, ECF No. 22, which has been fully briefed, ECF Nos. 29; 32; 37. Defendant contends it terminated Plaintiff's employment for violating company policies and procedures on August 14, 2019 and August 19, 2019. ECF Nos. 22-4 at PageID.207–208; 22-17 at PageID.354; 22-25 at PageID.410. Plaintiff contends that Defendant's rationale is pretextual.[6] ECF No. 23-2 at PageID.990.

As explained hereafter, Defendant's Motion for Summary Judgment will be granted.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"

---

[6] A claim for retaliation in violation of public policy is a cause of action established by Michigan caselaw the elements of which are analogous to a claim for violation of the antiretaliation provision of Michigan's Whistleblower Protection Act. *See Silberstein v. Pro-Golf of America, Inc.*, 750 N.W.2d 615, 622 (Mich. Ct. App. 2008).

*Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). Mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the nonmoving party. *Anderson*, 477 U.S. at 248, 251.

The evidence is to be considered carefully and all reasonable inferences are to be drawn in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

### III.

Michigan recognizes a cause of action for violating Michigan public policy. *See generally* Patricia Nemeth & Deborah Brouwer, *Employment and Labor* Law, 59 Wayne L. Rev. 951, 953–72 (2014). Violations of public policy include retaliation both for refusing to conceal illegal conduct and for refusing to violate the law.

Defendant makes three arguments in its motion for summary judgment: (1) Plaintiff cannot establish that she engaged in a protected activity,[7] ECF No. 22 at PageID.135; (2) even if Plaintiff demonstrated a protected activity, there would be no causal connection to the adverse employment action, *id*. at PageID.140; and (3) Defendant terminated Plaintiff's employment for "legitimate, non-retaliatory reasons," which Plaintiff cannot prove was pretext, *id*. at PageID.142–43.

As protected activities, Plaintiff asserts she refused to violate the law and to conceal violations of the law. ECF No. 1-1 at PageID.19. Although Plaintiff's Complaint exclusively

---

[7] The parties agree that the termination of Plaintiff's employment is an adverse employment action.

focuses on the August 14, 2019 incident, *see* ECF No. 1-1, she identified five more instances during which she allegedly refused to violate or to conceal a violation of the law, *see* ECF No. 32.

The three alleged refusals to conceal will be discussed *infra* Section III.A, and the three alleged refusals to violate will be discussed *infra* Section III.B.

### A.

A refusal to conceal a violation of the law constitutes a protected activity under Michigan's framework for retaliation in violation of public policy. *Rivera v. SVRC Indus.*, No. 341516, 2021 WL 4047033, at *4 (Mich. Ct. App. Sept. 2, 2021) (holding that Michigan's "public policy that persons may not enter into agreements to conceal a crime or stifle a criminal investigation" is violated "when an employer conditions an employee's continued employment on the employee's agreement to conceal or stifle an investigation into criminal conduct.").

A refusal to conceal a violation of the law constitutes a protected activity if the plaintiff demonstrates that the defendant (1) instructed the plaintiff not to disclose illegal conduct, and (2) conditioned the plaintiff's employment on an agreement not to disclose the conduct. *Id*.

### 1.

Plaintiff first contends she engaged in a protected activity because she filed an incident report about a patient who threatened to kill her, which Plaintiff alleges is an assault. ECF No. 32 at PageID.940.

But Plaintiff has not alleged that Defendant asked her to conceal the threat. Rather, as Plaintiff testified, Chandler consoled the patient and "did not ask if [Plaintiff] was okay, she did not call the police, she did not make a report, *she did nothing*." ECF No. 22-4 at PageID.250 (emphasis added). Granted, after Plaintiff filed the report, Chandler was "visibly angry." *Id.* But Chandler's preference that Plaintiff not make a report was not a request that Plaintiff not complete

one. *See Rivera*, 2021 WL 4047033, at *6 ("[W]hile employees of defendant may have preferred that plaintiff not file a police report, defendant never implicitly or explicitly conditioned plaintiff's continued employment on her concealment of [another employee's] unlawful activity." (citations omitted)). Thus, this conduct is not a protected activity.

**2.**

Plaintiff next alleges she engaged in a protected activity by refusing to conceal a coworker's alleged improper use of prescription drugs, an alleged violation of Michigan Compiled Laws § 333.7403(1).[8] ECF No. 32 at PageID.940.

But nothing in the record suggests that Defendant asked Plaintiff to conceal this conduct either. Far from asking Plaintiff to conceal it, Defendant reviewed her report, determined that it was "legitimate and substantiated through compliance," investigated the conduct, and then took "corrective action." ECF No. 32-7 at PageID.1056. Although she "disclosed the conduct to others," there is no "evidence that defendant instructed her not to make such a report, or conditioned her continued employment on her not reporting [the] conduct." *See Rivera*, 2021 WL 4047033, at *2. Thus, Michigan's public policy also does not protect this activity.

**3.**

Plaintiff adds that she engaged in a protected activity by not concealing that "Defendant intentionally ma[de] patients sick" by not shutting down the clinic, an alleged battery. ECF No 32 at PageID.940.

---

[8] Michigan Compiled Laws § 333.7403(1) provides that:
> A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless [it] was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

MICH. COMP. LAWS § 333.7403(1).

The question of whether Defendant's actions on August 14, 2019 were a battery will not be addressed because—even if they were—no evidence suggests Defendant asked Plaintiff to conceal any conduct that occurred on that day. On the contrary, Defendant asked Plaintiff to complete a "form" detailing the incident. *See* ECF Nos. 32-2 at PageID.985 (Plaintiff's deposition testimony that Chandler asked her to complete the form); 22-19 at PageID.362 (the completed "form"). Without evidence that Defendant asked Plaintiff to conceal any of the events from August 14, 2019, she cannot demonstrate that she engaged in a protected activity. *See Rivera*, 2021 WL 4047033, at *2.

### B.

Plaintiff also alleges three refusals to violate the law. Only one of these occasions is a protected activity because the other two did not involve illegal conduct.

Unlike a refusal to conceal, a refusal to violate does not require the employer's direction to violate a law, only the plaintiff's refusal to do so. *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 256–57 (6th Cir. 2011) (recognizing Michigan "courts have implied a cause of action for wrongful termination in violation of Michigan's public policy [if] 'the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment.'" (first citing *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710 (Mich. 1982) (per curiam); and then citing *Humenny v. Genex Corp.*, 390 F.3d 901 (6th Cir. 2004))).

In order to prove a refusal to violate a law, Plaintiff must prove that she refused to do something, *see Giron v. Tyco Elecs. Corp.*, 762 F. App'x 233, 241 (6th Cir. 2019) (unpublished) ("[Plaintiff's] initial resistance and concern over the legality of the practice do not equate to refusal."), that was illegal, *see Hart v. Publicis Touchpoint Sols., Inc.*, 821 F. App'x 557, 562 (6th

Cir. 2020) (unpublished) (holding that the plaintiff's claim failed summary judgment because the conduct that he allegedly refused was not illegal).

**1.**

Plaintiff first alleges she refused to violate the law by refusing to provide medication to sedate a patient at Chandler's request, an alleged violation of Michigan Compiled Laws § 333.7311(1)(g). ECF No. 32 at PageID.939.

But § 333.7311(1)(g) applies to only "controlled substance[s]." Plaintiff refused to administer Benadryl, which both parties agreed at the February 11, 2022 hearing is not a controlled substance under § 333.7311(1)(g). Thus, her refusal to administer Benadryl is not a protected activity.

**2.**

Next, Plaintiff alleges she refused to violate the law by refusing to take orders from Chandler, who was not a registered nurse. Plaintiff contends that taking orders from Chandler would have been a violation of Michigan Complied Laws § 333.17211 which prohibits people from practicing nursing without a license. ECF No. 32 at PageID.939 (citing MICH. COMP. LAWS § 333.17211).

But Plaintiff was a registered nurse during the entire course of her employment with Defendant. For Plaintiff to refuse to violate § 333.17211, she would have had to refuse to practice nursing without a license. *See, e.g.*, *Irwin v. Ciena Health Care Mgmt.*, No. 294239, 2010 WL 4977928, at *2 (Mich. Ct. App. Dec. 7, 2010) (per curiam) (unpublished) (finding that the plaintiff's refusal of an order to administer insulin that supervisor RN did not have authority to give *and* that the plaintiff did not have the authority to administer under Michigan's Public Health Code was a refusal to violate the law).

At no point was Plaintiff ever asked to practice nursing without a license. Accordingly, Plaintiff cannot demonstrate that she refused to violate Michigan Complied Laws § 333.17211.

**3.**

Finally, Plaintiff alleges she refused to violate the law by refusing to change patients' weight notations in medical records, an alleged violation of Michigan Compiled Laws § 750.492a, which prohibits healthcare providers from "intentionally, willfully, or recklessly plac[ing] or direct[ing] others to place . . . misleading or inaccurate information" in a patient's medical chart "regarding the diagnosis, treatment, or cause of a patient's condition." *See* MICH. COMP. LAWS § 750.492a; *see also People v. Anderson*, 946 N.W.2d 825 (Mich. Ct. App. 2019) (holding that § 750.492a is violated when a healthcare worker intentionally or willfully falsifies information in a medical record).

There is a genuine issue of material fact as to whether Plaintiff refused to change patient weights in medical records. Plaintiff testified that Chandler often asked her to change patient weights, but she told Chandler "I can't do that, that's fraud; I can't do that, it's illegal." ECF No. 22-4 at PageID.211. Chandler contends that she never asked Plaintiff to change patient weights. ECF No. 22-17 at PageID.342. Although self-serving, as Defendant claims, Plaintiff's testimony creates a jury-triable issue of material fact as to whether Plaintiff refused to violate the law. *See Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020) ("Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial."). Such "credibility determinations . . . are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In summary, Plaintiff's only protected activity was her refusal to change the weights in patients' medical records.

## C.

After establishing a protected activity, Plaintiff must still prove three elements to establish a prima facie case: (1) that defendant knew of the protected activity, (2) that defendant took adverse employment action,[9] and (3) that there was a causal connection between the protected activity and the adverse employment activity. *Landin v. HealthSource Saginaw, Inc.*, 854 N.W.2d 152, 163–64 (Mich. Ct. App. 2014). Plaintiffs cannot prove retaliation unless they demonstrate that the defendant knew of the protected activity. *Garg v. Macomb Cnty. Comm. Mental Health Srvs.*, 696 N.W.2d 646, 654 (Mich. 2005) (en banc), *opinion amended on denial of reh'g* (July 18, 2005).

If all reasonable inferences are drawn in Plaintiff's favor, then there is a question of fact as to whether Defendant knew of Plaintiff's refusal to change patient weights. Plaintiff testified that she complained about being asked to change patient weights "all the time" and lists the names of multiple doctors and other employees she complained to about the issue. ECF No. 22-4 at PageID.211. Amy Peruski, Defendant's group facility administrator, testified she was not aware of anyone asking Plaintiff to change patients' weights. ECF No. 22-21 at PageID.375. *See supra* Section III.B.3.

## D.

Next, Plaintiff must prove causation between her refusal to change patient weights and the termination of her employment. *Debano-Griffin v. Lake Cnty.*, 828 N.W.2d 634, 638 (Mich. 2013); *accord West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. Ct. App. 2003) (per curiam) (holding that plaintiffs must "demonstrate that the adverse employment action was in some manner influenced by the protected activity").

---

[9] The parties do not contest that Plaintiff's termination constitutes adverse employment action.

A temporal relationship alone cannot establish a causation. *See West*, 665 N.W.2d at 472. However, combined with something more, like a supervisor's negative reaction to the protected activity, a temporal relationship could establish causation. *Id*. at 473 ("[T]he plaintiff in *Henry* also presented evidence that his superior expressed clear displeasure with the protected activity engaged in by the plaintiff." (citing *Henry v. Detroit*, 594 N.W.2d 107 (Mich. Ct. App. 1999))).

Plaintiff's evidence does not establish causation. *But see* ECF No. 32 at PageID.942–43 (claiming there are "several pieces of evidence that establish a factual question regarding causation"). Plaintiff testified that she refused to change patient weights sometime in late 2017 or early 2018. ECF No. 22-4 at PageID.211. But her employment was not terminated until August 2019, at least one year after she allegedly engaged in the protected activity. It is, at best, difficult for Plaintiff to establish temporal proximity under that timeline.[10] And, even if Plaintiff established temporal proximity, she has not established the "something more" required to establish causation. *See West*, 665 N.W.2d at 473. The only evidence in the record even alluding to a causal connection between Plaintiff's refusal to change patient weights and the termination of her employment is her vague testimony that Chandler "targeted" her because she "pushed back." ECF No. 22-4 at PageID.211. But Plaintiff does not breathe a word of how or when she was "targeted" or Chandler's specific conduct or statements demonstrating anger. Thus, even filled with temporal

---

[10] In *Whitman v. City of Burton*, the Michigan Court of Appeals found no causation because "an enormous temporal gap"—almost four years—existed between the plaintiff's alleged protected activity and the defendant's alleged retaliation. *Whitman v. City of Burton*, 874 N.W.2d 743, 754 (Mich. Ct. App. 2015) ("If whistleblowing and retaliation that occur close in time may not be sufficient to find causation under the WPA, then whistleblowing and retaliation that occur *far apart* in time certainly weigh against finding causation." (citing *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675–76 (6th Cir. 2013))). But the Michigan Supreme Court vacated the panel's finding of no causation. *Whitman v. City of Burton*, 873 N.W.2d 593 (Mich. 2016) (mem.). Although the Michigan Supreme Court's order provides little explanation as to why, it could be construed to suggest that causation *can* be established without close temporal proximity if other circumstantial evidence exists. No other circumstantial evidence exists here, though.

proximity, Plaintiff's balloon holds no air. *See Cooney v. Bob Evans Farms, Inc.*, 645 F.Supp.2d 620, 632 (E.D. Mich. 2009) (holding that—despite temporal proximity—the plaintiff's testimony that her supervisor "appeared 'mad'" about her protected activity was "insufficient" to support causation because there was no evidence of "actual conduct or statements" suggesting Plaintiff's protected activity influenced the termination (citation omitted)); *Goodman v. Genesee Cnty.*, No. 266955, 2006 WL 2270411, at *7 (Mich. Ct. App. Aug. 8, 2006) (per curiam) (unpublished) (finding a supervisor's comment regarding a plaintiff's protected activity, coupled with temporal proximity, was not enough to establish causation). Therefore, Plaintiff's testimony that she was "targeted" after refusing to violate the law, in the absence of any specific facts, is a "mere scintilla" of evidence. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251 (1986).

Because Plaintiff has failed to establish causation, her prima facie case fails. Consequently, Defendant's Motion for Summary Judgment will be granted.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the case**.

Dated: September 21, 2022    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge